## Commonwealth ex rel. Round, Appellant, *v.* Round.

Argued October 7, 1943. Before KELLER, P. J., BALDRIGE, STADTFELD, RHODES, HIRT, KENWORTHEY and RENO, JJ.

*A. F. Vosburg,* of *Vosburg & Vosburg,* with him *Edwin K. Logan,* for appellant.

*James A. Chambers,* of *Chambers & Chambers,* for appellee.

OPINION BY RENO, J., December 9, 1943:

Appellant has brought before us an order requiring her husband "to pay for the support and maintenance of his wife in the sum of $150 per month in addition to

providing her with her present quarters in the home on Clen-Moore Boulevard." The parties have separated; the appellant lives in the Clen-Moore residence; the appellee lives in a hotel.

The order is amply supported by the evidence. The Clen-Moore residence was purchased with the husband's money upon articles of agreement which designate him and his wife as tenants by the entireties for $10,289.37. For additions to and improvements of the property the husband expended $12,466.52, making its total cost $22,755.89. Against it, is a total indebtedness of $16,-059.43, represented by a mortgage, and loans and pledges of the cash surrender value of appellee's insurance policies. The husband's total income is $1,000 monthly. Deducting $252 for victory and income taxes, the balance, $748, is available for the payment of $100 per month required by the articles of agreement, $216.56 for payments upon the debts for the improvements and $100 per month for premiums upon his life insurance policies in which, under a trust agreement, his wife is the beneficiary. The total of these fixed charges is $416.56, and leaves a balance of $331.44 for the support of both appellant and appellee. The order of the court allows her $150 and the use of the home, and leaves him $181.44, out of which he must maintain himself outside of the home and meet the obligations incident to his position as the responsible head of a large public utility.

Although the evidence does not disclose the rental value of the Clen-Moore home, "it is perfectly apparent", so the court below said, "that almost $150 a month is being expended by the husband to provide the wife the home in which she lives. This, added to the sum of $150 per month to the wife in cash, amounts to almost $300 per month." Obviously, if the husband's financial situation were lightened by the sale of the property a larger cash award could be made to the wife, and her own financial position would be doubtless im-

proved if she occupied a smaller home. Judge BRAHAM, the record discloses, was a helpful counselor rather than a mere detached trier of the facts. He sagely suggested a sale of the property as a solution of the financial difficulties of the parties. The husband agreed to it, but it met the decided opposition of appellant. The husband, therefore, will be obliged to carry this heavy burden, and it is to be hoped that the equity the parties are gradually acquiring in the home by his monthly payments, only a small part of which are credited to principal, will not be totally wiped away by the gradual deterioration of the property or by depreciation of its market value.

Judge BRAHAM had before him and, as his opinion indicates, considered the testimony adduced in a proceeding against the wife under the Mental Health Act. He reports that the commission "found as a fact that the prosecutrix has suffered from delusions and hallucinations, principally with respect to the conduct of her husband." This testimony, although it became a part of the record by the agreement of the parties, has not been printed by appellant, because, her brief states, "it has no bearing upon the present proceeding, except to show the antagonistic attitude" of the appellee. Appellant might have asked us to draw that conclusion if she had exhibited the record. As it is, we accept Judge BRAHAM's finding that her hallucinations "caused much of the marital infelicity between the parties."

Order affirmed.